IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MONIQUE VANSTORY-FRAZIER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 08-3910 |
| | : | |
| CHHS HOSPITAL COMPANY, LLC, | : | |
| t/d/b/a CHESTNUT HILL HOSPITAL, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

YOHN, J.                                                                                     January __, 2010

      Plaintiff, Monique VanStory-Frazier, sues CHHS Hospital Company, LLC, t/d/b/a

Chestnut Hill Hospital, seeking damages and other relief for defendant's alleged violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage

Act ("PMWA"), 43 Pa. Stat. Ann. § 333.101 *et seq.*, and the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601 *et seq.*  Plaintiff alleges that defendant violated the FLSA and the

PMWA by failing to pay her overtime while she was employed as a front desk supervisor with

defendant's Chestnut Hill Family Practice between August 2007 and August 2008.  (Compl.,

Counts I & II.)  Plaintiff further alleges that defendant interfered with her exercise of rights under

the FMLA by failing to restore her to the front desk supervisor position upon her return to work

after taking approved FMLA leave.[1]  (*Id.*, Count III.)  Defendant has moved for partial summary

---

[1] Plaintiff also asserts a claim for retaliation under the FMLA, alleging that defendant
retaliated against her for taking FMLA leave by changing her job title and reducing her rate of
pay upon her return (*id.*, Count IV), but defendant has not moved for summary judgment as to
that claim (*see* Mem. of Law in Support of Def.'s Mot. for Partial Summ. J. ["Def.'s Mem."] 2

judgment as to these three claims, and plaintiff has opposed the motion. For the reasons set forth below, the court will deny defendant's motion.

## I.      Factual Background[2]

Plaintiff began working for the Chestnut Hill Family Practice (the "Family Practice"), one of nine medical practices owned by defendant, in June 2006. (Pl.'s Ex. A ["Pl.'s Dep."] 10-11, 18.) According to defendant, the Family Practice has six attending physicians and eighteen residents at any one given time (Def.'s Mem. 2) and more than a dozen staff members (*see* Pl.'s Ex. E ["Benish Dep."] 13-15). Initially hired as a referral coordinator, plaintiff was promoted to the position of payment poster in October 2006. (Pl.'s Dep. 21, 29-30.) Both of these positions were hourly, "nonexempt"[3] positions in which plaintiff was eligible for overtime compensation. (Pl.'s Dep. 31; *see* Benish Dep. 17-18.)

In August 2007, plaintiff was again promoted, this time to the position of front desk supervisor. (Pl.'s Dep. 37.) In this position, plaintiff was reclassified as an exempt employee, and her salary was increased from $14 to $18 per hour. (*Id.* at 32, 56-57.) Plaintiff testified that while serving as front desk supervisor, she worked approximately ten hours of overtime per week

---

(arguing that only Counts I, II, and III of plaintiff's complaint should be "dismissed")).

[2] As defendant has moved for summary judgment, the court considers the facts in the light most favorable to plaintiff.

[3] As discussed in greater detail below, both the FLSA and the PMWA require employers to compensate employees at a higher, overtime rate for hours worked in excess of forty in a workweek, unless the position falls into one of a number of statutory exemptions. *See* 29 U.S.C. §§ 207(a)(1), 213; 43 Pa. Stat. Ann. §§ 333.104(c), 333.105. Employees whose positions are covered by a FLSA or PMWA exemption are "exempt" employees, while employees whose positions do not come within one of the statutory exemptions, and for whom overtime pay is required, are "nonexempt" employees.

(*id.* at 113), although because defendant classified her as an exempt employee, she was not compensated for this additional work.

As front desk supervisor, plaintiff acted as a liaison between the practice manager, Kathleen Benish, and the front desk, which at the time was staffed by five employees who handled patient check-in and check-out and answered the phones. (*Id.* at 21, 41-42.) Plaintiff was responsible for the "smooth, efficient and appropriate functions of the office and support staff," including

> making certain that money was collected; that patients were being received well by the staff; that they were using appropriate phone language, appropriate gestures at the front desk; for those who were supposed to be answering the phone, that they would be answering the phones; for those who were supposed to be checking in, checking in, not reading, not doing other things; that the check-out person would be taking in the encounter forms as patients were finished being seen by the doctors; that that person would be entering the charges.

(*Id.* at 47-48.) Plaintiff also dealt with "supervisory issues" that came up in the check-in process, handling "any problems with patients, if they came in late, if they did not present with their co-pay; overseeing verification." (*Id.* at 40-41.)

In addition to these responsibilities, because the practice was short-staffed at the time of plaintiff's promotion, she "ended up doing check-in and answering the phones." (*Id.* at 40.) In this capacity, plaintiff primarily "pick[ed] up the doctors' lines, emergency lines, because those were the calls that for the most part had to run back and forth with triage." (*Id.* at 54; *see also id.* at 40.) She also instructed the front desk staff to send "problem calls" to her so that the phone system would not get overloaded. (*Id.* at 49-52.)

Plaintiff testified that as front desk supervisor she was not involved in scheduling or training front desk employees. (*Id.* at 42.) However, for most of her time in the position, she

received and decided other front desk employees' requests for time off (*id.* at 145-46), and she

also instructed employees regarding changes she implemented (*id.* at 48-49). For example, when

plaintiff changed the practice's sign-in sheet in order to comply with applicable law, she

instructed the front desk staff to use the new form. (*Id.* at 48-49, 52-53.) She also gave the front

desk staff specific instructions on how to handle problem calls. (*Id.* at 49-51.) Moreover,

although plaintiff testified that she did not have the ability to discipline front desk employees (*id.*

at 42), she did address performance issues with employees on occasion, reminding one

chronically late employee that it was important for her to arrive on time (*id.* at 68-69) and

reminding employees who failed to use the correct forms and phone protocols to follow the

appropriate procedures (*id.* at 53).

While in the front desk supervisor position, plaintiff participated in at least a few monthly

management meetings with Benish and Dina Baker, who managed the clinical department. (*Id.*

at 28, 44.) Plaintiff testified that she did not discuss the hiring or potential termination of front

desk employees in those meetings as that was "not the intent of the meetings," which instead

focused on things like problems related to the transition from one computer system to another

and patient issues. (*Id.* at 45.) She also denied having any ability to make recommendations

regarding the hiring or termination of front desk employees. (*Id.*) Plaintiff generally did not

complete performance reviews of front desk employees,[4] but she did complete "rounding

---

[4] Plaintiff testified that on one occasion, at Benish's request, she completed a review of
Lasjohn Crawford, the referral coordinator for the Family Practice, "answer[ing] questions based
on [her] knowledge of what [she] saw [Crawford] do in the office[,] . . . the reception of patients
to her[,] . . . [a]nd her efficiency." (*Id.* at 58, 60.) According to plaintiff, Benish asked her to do
the review because she thought that plaintiff knew Crawford better than Benish did, even though
Crawford was "not under the front desk." (*Id.* at 58-59.)

reports," preparing "little synops[e]s of how they're doing at the front, what they're doing, if there are any issues that need to be addressed." (*Id.* at 43-44.)

Plaintiff also was required to continue performing her former payment poster function during her tenure as front desk supervisor. (*Id.* at 76, 164-65.)

In March 2008, plaintiff submitted a request for medical leave pursuant to the FMLA. (Def.'s Ex. 4 (Pl.'s FMLA leave request).) Benish approved the request on March 24, 2008 (*id.*), and plaintiff commenced her FMLA leave on April 3, 2008 (Pl.'s Dep. 82). After being cleared by her physician to return to work on "light duty" effective June 27, 2008 (Pl.'s Ex. C (Pl.'s certification of fitness for duty)), plaintiff returned to work on June 30, 2008 (Pl.'s Dep. 82, 109). Although plaintiff returned to the position of front desk supervisor and "jumped right in and started picking up phone calls like I would normally do" (*id.* at 111-12), she was soon informed that her position was being eliminated. On or about July 14, 2008, plaintiff met with Jim Como, the human resources director, Theresa Ward, the director of physician practices, and Benish, who advised her that Benish would be acting as front desk supervisor and offered her a nonexempt position as an accounts receivable representative (or "biller") at a reduced pay rate of $15.37 per hour. (*Id.* at 120-22.) Plaintiff accepted the position and has continued to work for defendant in this capacity. (*Id.* at 121-22.)

There is no dispute that plaintiff was not informed that her position was being eliminated until some number of days after she returned from FMLA leave. (*See* Pl.'s Statement of Facts in Resp. to Def.'s Mot. for Partial Summ. J. ["Pl.'s Statement"] ¶ 26 ("On July 14, 2008, Plaintiff was informed that she was being removed from the position of Front Desk Supervisor."); Def.'s Mem. 6 (same, but asserting that date plaintiff was informed was July 7).) There is a dispute,

however, as to when the decision to eliminate the position was made.  Although Ward testified that "[t]he final decision [to eliminate plaintiff's position] was made when [plaintiff] came back from FMLA . . . [p]robably within a week" (Def.'s Ex. 7 ["Ward Dep."] 54), defendant concedes that Ward initially recommended eliminating the position as early as February or March 2008 (Def.'s Mem. 6), and Benish testified that the actual decision to eliminate the position was made in early March 2008, while plaintiff was still at work (Benish Dep. 25-26; *see also id.* at 45-46, 49, 52-53).  However, plaintiff cites an email from Benish to Dan Barr, the assistant CEO, dated July 1, 2008, the day after plaintiff returned to work, in which Benish summarized the decisionmaking process concerning plaintiff's position as follows:

> While [plaintiff] was away it was determined that we would restructure FP.  We are doing away with that position, as the workings of the front desk were not hindered with her absence, and, I was able to work more closely with the front desk personnel.
>
> Instead of a layoff, the decision was made to offer her another open position within the Business Office as an AR Rep bringing her back to her prior salary.
>
> (She held this position prior to her being moved into the Supervisor role).  If you approve, we would like to meet with her tomorrow, and present this adjustment.

(Pl.'s Ex. D (July 1, 2008, email from Benish to Barr).)  Based on this email, plaintiff contends that the decision to eliminate her job was actually made while she was on FMLA leave.  (Pl.'s Statement ¶ 27.)

In August 2008, plaintiff filed this civil action, challenging defendant's failure to pay her overtime while she served as front desk supervisor, in violation of the FLSA and the PMWA (Compl., Counts I & II), and asserting claims for interference and retaliation under the FMLA based on defendant's failure to restore her to her former position upon her return from FMLA

leave (*id.*, Counts III & IV).  Following the conclusion of the discovery period, defendant filed the instant motion for partial summary judgment as to plaintiff's FLSA, PMWA, and FMLA interference claims.

## II.  Summary Judgment Standard

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  Where the moving party seeks summary judgment as to a claim on which the nonmovant will bear the burden of proof at trial, the nonmovant, to avoid summary judgment, must make a showing sufficient to establish each element essential to its case.  *See Celotex*, 477 U.S. at 322-23.  Where, however, the moving party will bear the burden of proof at trial, "it is inappropriate to grant summary judgment . . . unless a reasonable juror would be compelled to find [the moving party's] way on the facts needed to rule in its favor on the law."  *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir.

2007) (footnote omitted).

In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255. "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation and internal quotation marks omitted). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## III.    Discussion

### A.    FLSA Claims

Subject to various exemptions, the FLSA requires employers to compensate employees "at a rate not less than one and one-half times the [employee's] regular rate" for hours worked in excess of forty in a given workweek. 29 U.S.C. § 207(a)(1). This obligation to pay overtime wages does not apply, however, with respect to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Defendant contends that summary judgment must be granted as to plaintiff's overtime pay claim because plaintiff's position as a front desk supervisor was properly classified as "exempt" under both the "executive" and "administrative" exemptions referenced in 29 U.S.C. § 213(a)(1). "FLSA exemptions should be construed narrowly, that is, against the employer." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008), *cert. denied*, 129 S. Ct. 763 (2008). "The burden of proving these exemptions is upon the employer, and if the record is unclear as to some

exemption requirement, the employer will be held not to have satisfied its burden." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991).  Defendant must prove that the employee "comes '*plainly and unmistakably*' within the exemption's terms." *Lawrence*, 527 F.3d at 310 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

### 1.    "Executive" Exemption

The applicable U.S. Department of Labor ("DOL") regulations provide that an employee will be deemed to be "employed in a bona fide executive capacity" for purposes of the FLSA if the employee: (1) is compensated on a salary basis at a rate of not less than $455 per week, exclusive of board, lodging, or other facilities; (2) has as her "primary duty" "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) "customarily and regularly directs the work of two or more other employees"; and (4) "has the authority to hire or fire other employees" or the ability to give "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees," which suggestions and recommendations are given "particular weight."  29 C.F.R. § 541.100(a).[5]

Plaintiff argues that the executive exemption is inapplicable to her, noting that she "did not have the authority to hire or fire subordinate employees or to recommend that they be hired or fired."  (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Partial Summ. J. ["Pl.'s Opp'n"] 4 n.3.)  The court agrees that defendant has not met its burden to establish that a reasonable juror would

---

[5] The DOL revised its regulations implementing the overtime pay exemption for executive and administrative employees in 2004.  These new regulations, which took effect in August 2004, are applicable to plaintiff's FLSA claim as that claim concerns plaintiff's entitlement to overtime compensation for work performed in 2007 and 2008.

be compelled to find otherwise.  As defendant notes (Def.'s Mem. 13), in her capacity as front

desk manager, plaintiff participated in at least a few monthly management meetings at which

hiring or termination of employees apparently was discussed.  (Pl.'s Dep. 44-45.)  However,

plaintiff testified that she personally did not discuss the hiring or potential termination of front

desk employees in those meetings, and she also stated that she did not have the ability to make

recommendations regarding the hiring or termination of front desk employees.  (*Id.* at 45.)

Benish testified that, as front desk supervisor, plaintiff "would be part of th[e] hiring and firing

process" (Benish Dep. 18; *see also id.* at 93), but she conceded that plaintiff did not have the

authority to hire anyone or to terminate anyone's employment (*id.* at 19), and her testimony falls

short of establishing that any "suggestions and recommendations" plaintiff may have made "as to

the hiring [and] firing . . . of other employees" were given "particular weight."[6]

This case is thus readily distinguishable from *McClain v. McDonald's Corp.*, No. 05-

1117, 2007 WL 210440 (E.D. Pa. Jan. 25, 2007), and *Goff v. Bayada Nurses, Inc.*, 424 F. Supp.

2d 816 (E.D. Pa. 2006), cited by defendant, in which courts have found particular jobs to have

been properly classified as exempt pursuant to the FLSA's executive exemption.  In *McClain*, the

plaintiff herself had testified that she "interviewed and hired employees without consulting her

superiors; disciplined employees; suspended and fired employees; and recommended employees

for promotion."  2007 WL 210440, at *10 (internal citations omitted).  Likewise, in *Goff*, the

plaintiff's role in the hiring and firing process was "evidenced by . . . two termination letters that

---

[6] The factors to be considered in determining whether an employee's suggestions and
recommendations are given "particular weight" include "whether it is part of the employee's job
duties to make such suggestions and recommendations; the frequency with which such
suggestions and recommendations are made or requested; and the frequency with which the
employee's suggestions and recommendations are relied upon."  29 C.F.R. § 541.105.

she alone signed," as well as by the plaintiff's own testimony regarding her "substantive involvement in interviewing, recruitment, and hiring."  424 F. Supp. 2d at 822.

Because it is clear that plaintiff had no authority to hire or fire other employees, and because there is no evidence that she made suggestions and recommendations regarding hiring and firing or any other change in status, which suggestions and recommendations were given "particular weight,"[7] defendant has not met its burden to establish undisputed facts that would compel a reasonable juror to find that the position falls within the FLSA's executive exemption.[8]

### 2.    "Administrative" Exemption

Under the FLSA, an "employee employed in a bona fide administrative capacity" is an employee (1) who is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities"; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  Plaintiff does not contest that her compensation arrangement met the salary prong of the administrative exemption.  (Pl.'s Opp'n 5 n.4.)  Plaintiff also concedes that as front desk supervisor, her "job duties included some tasks that could be

---

[7] Plaintiff acknowledged having completed a performance review of one employee (Pl.'s Dep. 58-60) and "rounding reports" on several others, preparing "little synops[e]s of how they're doing at the front, what they're doing, if there are any issues that need to be addressed" (*id.* at 44), but there is no evidence that plaintiff recommended that any employee's status be changed, much less that any such recommendation was given "particular weight."

[8] Indeed, the evidence presented may well lead to a conclusion that no reasonable juror could find that the position falls within the exemption.

considered administrative work." (*Id.* at 6.) The parties dispute, however, whether the performance of such "administrative" work was plaintiff's primary duty, and whether her primary duty "include[d] the exercise of discretion and independent judgment with respect to matters of significance."

Defendant argues that plaintiff's primary duty was to manage the front desk operations and staff (*see* Def.'s Mem. 3-4, 13), while plaintiff contends that her "primary job functions were to answer the telephone and to continue her work as a Payment Poster" (Pl.'s Opp'n 5). The supervisory job responsibilities that defendant focuses on—which by plaintiff's own account included making decisions regarding employees' requests for time off (Pl.'s Dep. 145-46), preparing "rounding reports" regarding employees' performance (*id.* at 43-44), implementing a new sign-in sheet to comply with applicable law (*id.* at 48-49), and instructing employees in how to handle problem calls (*id.* at 49-51)—includes work that might arguably be encompassed by the administrative exemption.[9] *See* 29 C.F.R. § 541.201(b) (work directly related to management or general business operations includes "work in functional areas such as[,] [*inter alia*,] . . . personnel management"); *McKinney v. United Stor-All Ctrs. LLC*, No. 08-0333, 2009 WL 3008080, at *6 (D.D.C. Sept. 21, 2009) (responsibilities such as supervising and training staff are the type of duties encompassed by the administrative exemption); *cf.* 29 C.F.R. § 541.102 (defining "management," for purposes of the executive exemption, to include activities such as training employees, directing their work, determining techniques to be used, and implementing

_____

[9] Defendant contends that plaintiff's supervisory responsibilities were more extensive than those conceded by plaintiff. In particular, defendant asserts that plaintiff was responsible for "scheduling, oversight of assignments, discipline and performance reviews" of front desk employees. (Def.'s Mem. 3.) At the summary judgment stage, however, plaintiff's evidence must be believed.

legal compliance measures).  However, plaintiff's remaining responsibilities —assisting with check-in, answering the phones, and continuing to perform her former payment poster function—are nonexempt.  *See id.* at *8 (nonexempt duties performed by self-storage facility managers included answering phone calls from potential customers and logging payments into software reporting program); Pl.'s Dep. 31 (payment poster position was classified as nonexempt).

For purposes of the FLSA, an employee's "primary duty" is "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  In determining an employee's primary duty, the "major emphasis" is on "the character of the employee's job as a whole," and factors relevant to the determination include

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.*  While the amount of time spent performing exempt work "can be a useful guide in determining whether exempt work is the primary duty of an employee[,] . . . [t]ime alone . . . is not the sole test," and employees who spend less than fifty percent of their time performing exempt duties "may nonetheless meet the primary duty requirement if the other factors support such a conclusion."  *Id.* § 541.700(b).

The parties do not address the factors specified in the regulation, and the record contains little evidence as to any of them.  Apart from plaintiff's assertion that as front desk supervisor, she "[p]rimarily . . . answered telephones" (Pl.'s Statement ¶ 5; Pl.'s Dep. 40-41) and Benish's estimation that plaintiff spent "quite a number of hours" on the phone with patients and inputting

13

patient information into the computer (Benish Dep. 73-74), there is no evidence as to how plaintiff's time was allocated between exempt and nonexempt work,[10] nor is there any evidence regarding the relationship between plaintiff's salary and the wages of other front desk employees. Moreover, it is not at all clear that plaintiff's supervisory responsibilities were her most important duties, given that the Family Practice was short-staffed during her tenure as front desk supervisor, requiring her to step in and answer the phones as well as to continue performing her prior payment poster function.[11] *See Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 675 (11th Cir. 2009) (produce manager's testimony that due to understaffing, he was required to perform so much nonexempt work that he had no time to fulfill some of his management responsibilities suggested that his non-management responsibilities were more important than his managerial duties); *McKinney*, 2009 WL 3008080, at *8 (finding it unclear whether self-storage facility managers' managerial responsibilities were more important than their non-managerial responsibilities where, "given the few employees who staffed each facility as well as the nature

---

[10] Citing Benish's testimony that plaintiff's non-clerical responsibilities added only two to three hours to Benish's workday, plaintiff argues that she, too, spent no more than two to three hours—or twenty to thirty percent of her ten-hour workday—on the non-clerical aspects of her job. (Pl.'s Opp'n 6-7.) Although a reasonable juror could agree with plaintiff on this point, the court cannot conclude that a reasonable juror would be compelled to do so, given the substantial differences between Benish's overall job responsibilities as practice manager and plaintiff's responsibilities as front desk supervisor.

[11] Plaintiff testified that although she "was supposed to be front desk supervisor," because the practice was short-staffed, she "actually ended up doing check in and answering the phones." (*Id.* at 40.) In order to help the practice "run smoother," plaintiff primarily handled the more time-consuming types of calls. She elected to pick up the doctors' lines and emergency lines "because those were the calls that for the most part had to run back and forth with triage." (*Id.* at 54; *see also id.* at 40.) She also stated that she often handled problem calls to avoid the phone system becoming overloaded while front desk staff dealt with abusive or argumentative callers. (*Id.* at 51-52.)

of the employer's business, it seems at least as likely that the storage facilities would have ceased

to function had the plaintiffs shirked their non-exempt duties to answer phone calls from

potential customers, log payments into the software reporting program, assess late fees and

perform their custodial and maintenance tasks") (internal citations omitted).  There is evidence

that plaintiff performed at least some of her job responsibilities without close supervision

(*see* Pl.'s Dep. at 52-53 (plaintiff held front desk staff meetings which Benish generally did not

attend), 145-46 (plaintiff received and decided front desk employees' requests for time off)), but

that alone is not enough to compel a conclusion that plaintiff's primary duty was the performance

of exempt work.  Accordingly, the court finds that defendant—which bears the burden of proving

that plaintiff comes within the exemption's terms—has failed to establish that a reasonable juror

would be compelled to find that plaintiff's primary duty was "the performance of office or non-

manual work directly related to the management or general business operations of [her]

employer."

Defendant likewise has failed to establish without a dispute as to the facts that plaintiff's

primary duty "include[d] the exercise of discretion and independent judgment with respect to

matters of significance."  29 C.F.R. § 541.200(a)(3).  "In general, the exercise of discretion and

independent judgment involves the comparison and the evaluation of possible courses of

conduct, and acting or making a decision after the various possibilities have been considered.

The term 'matters of significance' refers to the level of importance or consequence of the work

performed."  *Id.* at § 541.202(a).  Factors relevant to whether a particular employee exercises

discretion and independent judgment with respect to matters of significance include:

whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b). An employee may exercise discretion and independent judgment "even if [her] decisions or recommendations are reviewed at a higher level." *Id.* § 541.202(c).

Defendant argues that plaintiff exercised discretion and independent judgment in "implement[ing] new policies for the front desk staff and [holding] meetings to discuss such policies." (Def.'s Mem. 13.) Significantly, defendant points to only two such "policies": (1) the new sign-in sheet that plaintiff created, and (2) the "specific instructions" she gave the front desk on how to handle "problem calls." (*Id.*) Even assuming that plaintiff's implementation of these measures shows that she had "authority to . . . implement . . . operating practices" for front desk staff within the meaning of the regulation, defendant has not shown that it was part of plaintiff's primary duty to do so. *See* 29 C.F.R. § 541.200(a)(3) (administrative exemption requires employee's "primary duty" to "include[] the exercise of discretion and independent judgment with respect to matters of significance"). To the extent that defendant relies on plaintiff's role in disciplining front desk employees and in the hiring and firing process to show that plaintiff exercised discretion and independent judgment (*see* Def.'s Mem. 13), that reliance is misplaced.

Plaintiff testified that she did not have authority to discipline individuals at the front desk (Pl.'s Dep. 42),[12] and there is no evidence that she had any decisionmaking authority with respect to hiring and firing. Although an employee may exercise discretion and independent judgment by making recommendations for action as opposed to taking action directly, *see* 29 C.F.R. § 541.202(c), plaintiff testified that she did not have the ability to make recommendations regarding the hiring or termination of front desk employees (Pl.'s Dep. 45).

Because defendant has failed to meet its burden to establish that a reasonable juror would be compelled to find that plaintiff's primary duty was "the performance of office or non-manual work directly related to the management or general business operations of [her] employer" and "include[d] the exercise of discretion and independent judgment with respect to matters of significance," defendant has failed to show as a matter of law that the front desk supervisor position falls within the FLSA's administrative exemption. Moreover, because defendant has failed to meet its burden to establish that either the executive or the administrative exemption applies, the court will deny the motion for summary judgment as to plaintiff's overtime claim under the FLSA.

### B.     PMWA Claim

Like the FLSA, the PMWA requires employers to pay employees an overtime rate "not less than one and one-half times the employee's regular rate" for hours worked in excess of forty in a workweek, 43 Pa. Stat. Ann. § 333.104(c), and exempts from this overtime requirement employees employed "[i]n a bona fide executive, administrative or professional capacity," *id.*

---

[12] Defendant cites plaintiff's testimony that she would follow up, in person or by email, with employees who did not use the required forms or phone protocols to ask them to follow the correct procedures (*id.* at 53), but it is not clear that these interactions amounted to discipline.

§ 333.105(a)(5). The parties do not separately address plaintiff's overtime claim pursuant to the PMWA, instead arguing that because the executive and administrative exemptions under the PMWA substantially parallel the FLSA exemptions, the same analysis should apply under both statutes. (Def.'s Mem. 14; Pl.'s Opp'n 4 n.2.) Although the criteria for these exemptions under the PMWA are not identical to FLSA's criteria, the court agrees that the tests are sufficiently similar that the court's analysis regarding the FLSA exemptions also applies to the PMWA exemptions.[13] The court thus concludes that for the same reasons defendant has failed to show that the front desk supervisor position falls within the FLSA's executive or administrative exemptions, defendant also has failed to show that the position is encompassed by the executive or administrative exemptions under the PMWA. Accordingly, the court will deny defendant's motion for summary judgment as to plaintiff's overtime claim under the PMWA.

## C. FMLA Interference Claim

"The FMLA grants eligible employees the right to take up to twelve workweeks of leave in any twelve-month period if a 'serious health condition . . . makes the employee unable to perform the functions of the position of such employee.'" *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)). Upon return from a

---

[13] With respect to the executive exemption, the applicable PMWA regulations, like the FLSA regulations, define "[e]mployment in a bona fide executive capacity" to mean work by an individual who, *inter alia*, "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight." 34 Pa. Code § 231.82(3). As to the administrative exemption, similar to the FLSA regulations, the PMWA regulations provide that for an employee earning $250 or more per week to qualify for the administrative exemption, the employee's primary duty must "consist[] of the performance of [office or nonmanual work directly related to management policies or general operation of his employer or the customers of the employer]" and must "include[] work requiring the exercise of discretion and independent judgment." *Id.* § 231.83(1), (5).

qualified absence, the employee is entitled to be restored to his or her former position, or to an "equivalent position." 29 U.S.C. § 2614(a)(1); *see also Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). The FMLA makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [subchapter I of the FMLA]." 29 U.S.C. § 2615(a)(1). To assert a claim for interference, an employee must show "that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." *Sarnowski*, 510 F.3d at 401; *Callison*, 430 F.3d at 119.

Plaintiff's FMLA interference claim is premised on defendant's "fail[ure] to return [her] to her position upon [her] return from FMLA leave." (Compl., Count III ¶ 4.) Defendant argues that this claim fails as a matter of law because it is undisputed that "[w]hen Plaintiff returned to work on June 30, [2]008, she returned to her position as front desk supervisor and received the same pay."[14] (Def.'s Mem. 15 (citing Pl.'s Dep. 111-12).) Although plaintiff does not dispute that she served as front desk manager for the first two weeks following her leave, she argues that she nevertheless may maintain her interference claim because "the evidence is clear that Defendant decided to strip Plaintiff of that position *while she was on leave*." (Pl.'s Opp'n 10 (emphasis supplied by plaintiff).) Because there is evidence from which a jury reasonably could conclude that elimination of plaintiff's position was a foregone conclusion by the time she returned to work, the court agrees that summary judgment is not warranted as to plaintiff's interference claim.

---

[14] Defendant also notes that plaintiff "testified that she received all the pay and benefits that she was entitled to while out on leave." (Def.'s Mem. 15 (citing Pl.'s Dep. 109).) Plaintiff does not dispute this.

In reaching this conclusion, the court is guided by *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1288 (10th Cir. 2007), in which the Tenth Circuit held that a plaintiff who returned to her former position following FMLA leave only to be removed from that position within a matter of days was not foreclosed from bringing an interference claim, where her employer "cite[d] only factors predating [her] return to work to justify the adverse action." The plaintiff in *Campbell*, one of two patient care technicians at a medical clinic, had taken FMLA leave to have surgery. *Id.* at 1284-85. Four days after her return, the employer notified her that her position was being terminated because the clinic's declining patient population could support only one patient care technician position, which the employer elected to fill with plaintiff's colleague based on seniority as well as on concerns about plaintiff's performance. *Id.* at 1286, 1288. Both the need to eliminate one technician position and the problems with plaintiff's performance had been fully apparent to the employer before plaintiff returned from leave, and the employer offered no evidence that any new facts regarding either consideration had come to light in the period after her return. *Id.* at 1288. In these circumstances, where plaintiff's termination was, in effect, a "foregone conclusion" by the time she returned to work, the court found that the employer's temporary restoration of the plaintiff's position was "illusory" and did not preclude her from asserting an interference claim. *Id.*

The same is true here. Like the plaintiff in *Campbell*, the plaintiff in this case returned to her former position after taking FMLA leave, only to learn approximately two weeks later that the position was being eliminated. (Pl.'s Dep. 111-12; Pl.'s Statement ¶ 26.) Defendant does not contend that the decision to eliminate the front desk supervisor position was based on any facts or information that were not available until after plaintiff returned to work. To the contrary,

defendant admits that the decision was the result of an assessment of the Family Practice conducted by Ward in February 2008, the month before plaintiff even requested FMLA leave; that Ward recommended eliminating the position as early as February or March 2008; and that during plaintiff's FMLA leave defendant was able to confirm that the position was unnecessary by having Benish absorb plaintiff's duties during plaintiff's absence. (Def.'s Mem. 5-6.) Although Ward testified that no final decision was made until after plaintiff's return (Ward Dep. 54), plaintiff has produced evidence strongly suggesting that the decision was a foregone conclusion at that point and that defendant had refrained from finalizing it only because human resources advised that plaintiff "did need to be returned to her current position"[15] (*id.* at 52-53; Pl.'s Ex. D (July 1, 2008, email from Benish to Barr describing decisions regarding restructuring the Family Practice that had been made "[w]hile [plaintiff] was away," including the decision to "do[] away with [plaintiff's] position"); *see also* Benish Dep. 25-26, 49 (decision to eliminate front desk supervisor position was made in early March, before plaintiff requested FMLA leave).) In these circumstances, the fact that plaintiff was temporarily restored to her prior position does not preclude her from asserting an interference claim.[16] *See Campbell*, 478 F.3d at

---

[15] It was precisely this possibility of creating "a perverse incentive for employers to make the decision to terminate during an employee's FMLA leave, but allow the employee to return for a brief period before terminating her so as to insulate the employer from an interference claim" that the court in *Campbell* sought to avoid. 478 F.3d at 1288.

[16] *Garabedian v. Lone Star Steakhouse & Saloon*, No. 06-3115, 2007 WL 1795677 (E.D. Pa. June 20, 2007), cited by defendant, does not hold to the contrary. The plaintiff in *Garabedian* asserted an interference claim for failure to restore based on the defendant's hiring of a second general manager at the location where plaintiff was employed during plaintiff's FMLA leave. *Id.* at *1. The court rejected the claim, noting that plaintiff had been reinstated to same position and wage at the same location following his FMLA leave before being terminated some weeks later, and that the second manager had been transferred to another location within five days of plaintiff's return. *Id.* In so holding, the court distinguished *Campbell*, observing

1288 (discussed *supra*); *Moore v. Czarnowski Display Serv., Inc.*, No. 08-1637, 2009 WL

614815, at *3 (W.D. Pa. Mar. 6, 2009) (allegations that employer deactivated plaintiff's

computer accounts and access card before she returned to work, suspended her upon her return,

and then terminated her supported a reasonable inference that she was not actually permitted to

return to work); *Whitman v. Proconex, Inc.*, No. 08-2667, 2009 WL 141847, at *7 (E.D. Pa. Jan.

20, 2009) (fact that plaintiff "returned to work and was then terminated" would not prevent her

from asserting an interference claim for failure to reinstate where defendant argued that the

decision to terminate was made—and was based on performance issues that occurred—before

plaintiff's FMLA leave).  There are clearly genuine issues of material fact.  Accordingly, the

court will deny defendant's motion for summary judgment as to plaintiff's FMLA interference

claim.[17]

---

that, unlike in that case, plaintiff did not "assert any incidents that predate his leave as cause for his termination."  *Id.* at *2.

[17] The court notes that the right to reinstatement under the FMLA is not unqualified.  In particular, the FMLA does not entitle an employee to any "position of employment other than any . . . position to which the employee would have been entitled had the employee not taken the leave."  29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement . . . than if the employee had been continuously employed during the FMLA leave period."); *see also Sarnowski*, 510 F.3d at 403 ("[T]he FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA."). Thus, defendant may still prevail by showing at trial that it would have eliminated plaintiff's position even if she had not taken FMLA leave.  *See id.* (plaintiff "will not prevail on his interference claim if [employer] can establish that it terminated [him] for a reason unrelated to his intention to exercise his rights under the FMLA"); 29 C.F.R. § 825.216(a) ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.").

**IV.    Conclusion**

For the reasons set forth above, the court will deny defendant's motion for summary judgment.  An appropriate order accompanies this memorandum.